**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

KINGSTON ROAD PARTNERS, LLC          CIVIL ACTION NO. 23-1730

VERSUS                               JUDGE S. MAURICE HICKS, JR.

TRISURA SPECIALTY INSURANCE          MAGISTRATE JUDGE HORNSBY
COMPANY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by Defendant Trisura Specialty Insurance Company ("Trisura"). See Record Document 38. The Motion seeks dismissal of all claims brought by Kingston Road Partners, LLC ("Kingston") on the basis that the suit is contractually prescribed under the policy's two-year suit limitation clause. See id. Kingston opposes the Motion, and Trisura replied. See Record Documents 40 & 45. For the reasons set forth below, the Motion for Summary Judgment is **DENIED**.

**FACTUAL BACKGROUND**

Kingston owns an apartment complex consisting of 280 units and 37 buildings located at 9045 Kingston Road in Shreveport, Louisiana. See Record Document 20-1 at 1–2. Trisura issued a commercial property policy, Policy No. TSIMJI055000, insuring the property at all relevant times. See Record Document 7-1. The policy included coverage against perils, including wind and hail. See id. Additionally, the policy contained a provision limiting legal action brought against Trisura to "2 years after the date on which the direct physical loss or damage occurred." Record Document 7-1 at 18.

On June 8, 2021, Midwest Technical Inspections ("Midwest") conducted an underwriting inspection of Kingston's property on behalf of Trisura. See Record Document 20-1. The inspection included a visual survey of the roofs, stairwells, paved areas,

building elevations, common areas, pool area, fencing, parking lots, carports, and more. See id. The report contains 20 color photographs documenting the property's condition on June 8, 2021. See id. at 10–13. All photographs in the report are timestamped between 11 a.m. and 1 p.m. on June 8, 2021. See id. The photos depict clean and orderly grounds, no storm debris on the roof, and no evidence of hail or wind impact on the roof. See id. Notably, one photograph is an image of the roof with the caption "[r]oof good condition." Id. at 13.

On May 24, 2022, Kingston reported a claim to Trisura for roof and exterior damage allegedly resulting from hail. See Record Document 7-2. The notice was prepared by Kingston's broker, and it listed June 7, 2021, as the date of loss. See id. After the loss was reported, Kingston retained Fusion Public Adjusters ("Fusion") to assist with the claim. See Record Document 20 at 3. Fusion inspected the property on August 2, 2022, and subsequently prepared a detailed estimate identifying $738,071.01 in roof and exterior damage. See Record Document 7-3. Fusion transmitted its estimate to Trisura as Kingston's satisfactory proof of loss. See Record Document 20 at 3.

On November 9–10, 2022, Trisura's engineering consultant, J.S. Held, performed an inspection of the property. See Record Document 7-4 at 3. Engineer Zachary Krish, issued a report dated December 7, 2022, identifying a range of possible storm dates during the policy period that could have caused the roof damage. See Record Document 7-4. The report referenced multiple wind events between June 7, 2021, and April 12, 2022, and expressly stated that the loss could have occurred on any of those dates, but the damage most likely occurred on June 7, 2021. See id. at 6–10.

On March 3, 2023, Trisura issued a partial denial letter referencing the policy's two-year suit limitation provision and stating that any action filed more than two years after the date of loss would be time barred. See Record Document 7-5 at 8. The letter identified the date of loss as June 7, 2021. See id. at 1–2.

On March 30, 2023, Trisura's engineering consultant, J.S. Held, issued a supplemental report labeling the date of loss as still "under investigation." See Record Document 7-8 at 1. This report examined hail events between May 2021 and June 2022. See id. The report indicates that the only two hail events were on May 10, 2021, and June 7, 2021. See id. at 2.

Kingston invoked the policy's appraisal provision, and an appraisal award in the amount of $1,136,063.14 was issued on August 13, 2023. See Record Documents 7-6 & 7-7. On August 31, 2023, Trisura rejected the appraisal award. See Record Document 7-9. Kingston filed suit in the First Judicial District Court, Parish of Caddo, Louisiana, on November 3, 2023, asserting claims for breach of contract and statutory bad faith. See Record Document 1-1. Trisura removed the suit to this Court based on diversity jurisdiction. See Record Document 1.

## LAW AND ANALYSIS

### a. Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In applying this standard, the court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart Louisiana, L.L.C., 850

F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id. If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 323). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational trier of fact to find for the non-moving party ...." Id.

**b.  Enforceability of the Two-Year Limitation Provision**

The Trisura policy contains a contractual limitation provision stating that no one may bring legal action against Trisura unless the action is brought within "2 years after the date on which the direct physical loss or damage occurred." Record Document 7-1 at 18. Under Louisiana law, insurance policies may validly shorten the prescriptive period for bringing suit, provided the limitation is not contrary to statute or public policy. See Taranto v. La. Citizens Prop. Ins. Corp., 62 So. 3d 721, 728 (La. 2011). This Court has previously upheld a provision in an insurance contract limiting the time to file suit to two

4

years. <u>See</u> <u>Mansfield Road, LLC v. Great American Insurance Company of New York</u>, 2022 WL 16857018, at *3 (W.D. La., 2022). Additionally, the Fifth Circuit has stated, "under Louisiana law, the parties to an insurance policy may contractually agree to limit the period within which suit must be filed …." <u>Noland v. Sun Life Assurance Co. of Canada</u>, 2001 WL 360775, at *1 (5th Cir. 2001).

The Court finds no basis in the record to invalidate the two-year limitation clause. Accordingly, the limitation period is enforceable, and the timeliness of Kingston's suit depends on when the direct physical loss or damage occurred. Thus, the dispositive question is whether the date of loss is established as a matter of law or whether the record reveals a genuine factual dispute requiring a jury determination.

### c. Genuine Issue of Fact as to the Date of Loss

Trisura contends that the record establishes June 7, 2021, as the date of loss and that Kingston's suit filed on November 3, 2023, is therefore prescribed. <u>See</u> Record Document 38. However, Kingston points to multiple pieces of evidence that create a genuine factual dispute as to whether the loss occurred in 2022, rendering the suit timely. <u>See</u> Record Document 40.

In support of its prescription argument, Trisura relies on the First Notice of Loss ("FNOL"), which lists June 7, 2021, as the date of loss. <u>See</u> Record Document 7-2. The FNOL, however, was prepared by Kingston's insurance broker, and Kingston's representative testified that he was unsure whether Kingston ever reviewed it. <u>See</u> Record Document 38-2 at 11–13. The FNOL also identifies only hail damage, which conflicts with later engineering reports describing roof conditions consistent with wind uplift, not hail impact. <u>Compare</u> Record Document 7-2 <u>with</u> Record Document 7-4.

Trisura also cites the Fusion estimate, which likewise lists June 7, 2021, as the date of loss. <u>See</u> Record Document 7-3. However, Kingston has shown that Fusion does not analyze weather data and has no meteorologists on staff. <u>See</u> Record Document 40-4 at 7–8. The appraisal award also lists June 7, 2021, as the date of loss. <u>See</u> Record Document 7-7. However, the record contains testimony that appraisal panels generally do not investigate dates of loss and do not have meteorologists on staff. <u>See</u> Record Document 40-1 at 131.

Next, Trisura relies on the December 7, 2022, J.S. Held engineering report, which references June 7, 2021, as the most likely date for wind damage out of 13 possible dates. <u>See</u> Record Document 7-4 at 5. Importantly, however, that report does not conclude with certainty that the damage occurred on June 7, 2021, nor does it completely rule out later dates. <u>See id.</u> Rather, it identifies a range of possible storm events. <u>See id.</u> In fact, it reports that the maximum reported wind occurred on April 12, 2022, at approximately 85 miles per hour. <u>See id.</u> at 4.

In addition, the March 30, 2023, supplemental report by J.S. Held does not resolve the date of loss issue. <u>See</u> Record Document 7-8. The report evaluates hail events between May 13, 2021, and June 1, 2022, and compares two possible dates that the hail damage could have occurred: May 10, 2021, and June 7, 2021. <u>See</u> Record Document 7-8 at 1–12. Although the report states that the June 7, 2021, storm was capable of producing up to one-inch hail, it also documents that no hail was reported within five miles of the property on June 7, 2021. <u>See id.</u> at 11. Contrastingly, there were multiple hail reports from the May 10, 2021, storm. <u>See id.</u> The Court also notes that when comparing

the supplemental report to the original J.S. Held report, the Court is left with some confusion.

The original J.S. Held report identifies May 10, 2021, as the only date on which hail was reported in close proximity to the property. <u>See</u> Record Document 7-4 at 35. That report does not list June 7, 2021, as a hail-producing event affecting the area. <u>See id.</u> However, the "Benchmark Hail History Report" contained in the original report identifies multiple additional hail events in 2021 and 2022, yet the only one of those dates discussed in the supplemental report was June 7, 2021. <u>See id.</u> at 46.

The lack of clarity on the information provided in the original and supplemental reports raises factual questions. <u>See</u> Record Document 7-4 & 7-8. A reasonable jury could conclude that Trisura's expert reports do not definitively establish June 7, 2021, as the date of loss and instead reflect an uncertain investigation. Therefore, these reports reinforce that the date of loss was not definitively established during Trisura's investigation.

The piece of evidence which most clearly creates a genuine issue of material fact as to the date of loss is the underwriting inspection performed on June 8, 2021. <u>See</u> Record Document 20-1. This inspection occurred the day after the alleged date of loss and includes twenty timestamped photographs documenting the property's condition. <u>See</u> Record Document 20-1 at 10–13. Although the purpose of this inspection was not focused on the roof, the photos show no storm damage, no missing shingles, no debris, clean grounds, and generally undisturbed roofing surfaces. <u>See id.</u> One photograph is captioned [r]oof good condition." <u>Id.</u> at 13. This evidence would allow a reasonable jury to conclude that the property did not sustain storm damage on June 7, 2021.

Against this backdrop, Kingston's evidence further strengthens the presence of a factual dispute. Kingston's expert Dillon Turner ("Turner") stated that the highest wind speed within the relevant dates occurred on April 12, 2022. <u>See</u> Record Document 40-3 at 8. Turner further explained that the highest hail event within the relevant dates occurred on March 22, 2022. <u>See id.</u> Additionally, Kingston's expert Henry Keith opined that the storm which likely caused the most damage to the roof occurred on April 12, 2022. <u>See</u> Record Document 40-2 at 8. Their opinions are consistent with the absence of observable damage in the June 8, 2021, inspection photos and with the April 2022 wind speeds identified by the J.S. Held report. <u>See</u> Record Documents 40-3, 40-2, 7-4, 7-8.

Viewing the evidence in the light most favorable to Kingston, the summary judgment record contains significant, competing evidence regarding the actual date of loss. Because the date of loss determines whether Kingston's suit is timely under the contractual limitation provision, and because a reasonable jury could find that the actual date of loss was not June 7, 2021, summary judgment must be denied.

Finally, because the Court denies the Motion based on factual disputes concerning the date of loss, it is unnecessary at this stage to determine whether Kingston's statutory bad faith claims would be governed by the policy's two-year limitation or Louisiana's ten-year prescriptive period for personal actions. <u>See</u> La. Civ. Code art. 3499. That issue may be addressed, if necessary, after the trier of fact determines when the loss occurred.

**CONCLUSION**

Considering the foregoing Motion for Summary Judgment (Record Document 38);

**IT IS ORDERED** that the Motion is **DENIED**.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 5th day of December, 2025.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE